IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| COURTNEY DEVON TRAPP, Institutional ID No. 1813367, SID No. 06059983 | § § § § | |
| Plaintiff, | § § § | Civil Action No. 1:20-CV-00044-BU |
| v. | § § | |
| RYAN MILLER, *et al.*, | § § § | |
| Defendants. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE
AND ORDER OF TRANSFER TO DISTRICT JUDGE DOCKET**

Plaintiff Courtney Devon Trapp brings this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights while incarcerated at the Robertson Unit of the Texas Department of Criminal Justice (TDCJ). Trapp brought claims alleging excessive use of force, deliberate indifference to serious medical needs, sexual assault, denial of access to courts, and bystander liability, and pled as Defendants: Robert Norton, Ryan Miller, Samantha Adams, Miguel Langdon, Brian McDonald, Perry Fincher, John Viramontes, Joshua Solis, Miguel Martinez-Garcia, Sonia Sparks, Cheryl Gail, and Toni Deer. *See* Dkt. No. 53.

The undersigned conducted judicial screening of Trapp's claims and found that Trapp's excessive-force claims against Langdon, Miller, and Martinez-Garcia survived

1

judicial screening. Dkt. No. 53. The undersigned dismissed all claims against the other defendants as frivolous or for failure to state a claim. *Id.*

The case is now before the Court because it is ready to be transferred back to the District Judge for entry of a scheduling order and further proceedings.

## I.  FACTUAL SUMMARY

Trapp alleges that on May 2, 2019, Officer Ryan Miller and Sergeant Robert Norton were escorting Trapp to the Robertson Unit's medical building so that Trapp could have his vitals checked before being placed in pre-hearing detention for punishment. Dkt. No. 2 at 6; Tr. at 19:55.[1] Once he arrived at the pre-trial detention holding cell, Miller and Norton placed Trapp up against a wall. Tr. at 20:30–20:40. Because Trapp believed he was in trouble for no reason, he admits to being frustrated with the situation. Tr. at 21:09. While Trapp was against the wall, Miller allegedly told Trapp that "you best not turn your bitchass around." Tr. at 22:26–22:30. Despite Miller's order, Trapp began to turn his head around, at which point Norton and Miller slammed Trapp onto the ground. Tr. at 22:55; Dkt. No. 2 at 6.

Trapp claims that while he was on the floor in handcuffs, he was hit in the face multiple times, stating that he felt hits coming from everywhere. Tr. at 15:05. However, Miller is the only individual that Trapp saw hit him. Dkt. No. 2 at 6. Trapp claims to have seen Miller put cuffs around his fist like "brass knuckles." Tr. at 1:03:02–1:03:10. After Miller placed the handcuffs around his fists, Trapp claims that Miller hit him in the face

---

[1] Transcript ("Tr.") citations refer to the audio record of Trapp's *Spears* hearing held on July 6, 2021. Dkt. No. 31.

2

with the handcuffs, "seriously damaging several teeth" and his head. Dkt. No. 2 at 6. According to Trapp, the attack stopped only when Sergeant LaFrance told the officers that a camera was now recording. *Id.* The entire attack lasted about 15 to 20 seconds. Tr. at 5:26–5:30.

The authenticated records and video surveillance show that Trapp sustained cuts to his face, a lacerated lip, and chipped teeth, which combined to cause significant blood loss. Dkt. No. 8; Tr. at 17:00–17:36. Trapp complains of severe headaches (2 or 3 times a week), dizziness, periods of blindness, anxiety, and panic attacks as a result of the May 2 incident. Tr. at 18:20–18:35, 32:30–32:50. Further, Trapp states that his pre-existing back issues have become worse since the event took place. Tr. at 38:49.

In addition to the May 2 occurrence, Trapp describes two other instances of excessive force. On March 18, 2020, after the filing of this lawsuit, Trapp claims that Langdon came to the door of his cell and asked repeatedly if Trapp was going to drop his lawsuit for the May 2 incident. Tr. at 52:54. When Trapp walked up to his cell door, he claims that Langdon sprayed him with chemical agents, causing him to briefly lose his vision and breath. Tr. at 52:50–53:08. Trapp claims that he did nothing to provoke this spraying.

Finally, on October 9, 2020, Trapp alleges that Officer Joshua Solis pulled him aside while Trapp was on his way to recreation time. Tr. at 56:00. Because inmates must be strip-searched before going outside, Solis told Trapp to strip and bend over at the waist. Tr. at 55:50–56:27. Trapp complied with Solis's request until Solis asked Trapp to bend over a fifth or sixth time. *Id.* At this point, Trapp told Solis that he was asking too much and

refused to comply. Tr. at 56:35–57:00. Trapp claims that he was then thrown up against the wall and brought back to his cell. Tr. at 57:00–57:10.

Once placed in his cell, Solis told Trapp to undress and lift his testicles. Tr. at 57:10–57:21. He was asked to lift his testicles multiple times, and Trapp claims to have complied with the order each time. *Id.* Officer Martinez-Garcia was standing on the side of the cell, and during a point in time when Trapp had his testicles lifted, Martinez-Garcia allegedly came from the side and sprayed Trapp with a chemical agent. Tr. at 57:34–57:48. As a result of being sprayed, Trapp claims that he could no longer breathe and had to place his head inside the toilet to get oxygen. Tr. at 58:04.

## II.  RELEVANT PROCEDURAL HISTORY

Trapped filed his complaint on February 28, 2020. Dkt. No. 2. The district court granted Trapp *in forma pauperis* status and transferred the case to the undersigned for further proceedings. Dkt. No. 5. On April 6, 2020, Trapp consented to proceed before a magistrate judge. Dkt. No. 10.

The undersigned reviewed Trapp's complaint, the authenticated records from TDCJ, Trapp's responses to a questionnaire, and ordered an evidentiary hearing under *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) and 28 U.S. § 1915. Dkt. Nos. 18, 31. A telephonic *Spears* hearing was held on July 6, 2021. Dkt. No. 31.

After considering Trapp's allegations, his *Spears* hearing testimony, his questionnaire responses, the authenticated records, and applicable law, the undersigned entered an Order to Answer and Partial Dismissal finding Trapp's excessive-force claims against Langdon, Miller, and Martinez-Garcia survived preliminary screening under 28

U.S.C. §§ 1915 and 1915A. *See* Dkt. No. 53. However, Trapp's claims against all other defendants were dismissed under 28 U.S.C. §§ 1915 and 1915A. *See id.*

In the Order to Answer and Partial Dismissal, the undersigned ordered service on Defendants Langdon, Miller, and Martinez-Garcia. Dkt. No. 53. On November 1, 2022, the undersigned administratively stayed the case to allow the Office of the Attorney General (OAG) to secure permission to represent the remaining Defendants. Dkt. No. 59. On November 21, 2022, the OAG informed the Court that it had obtained authority to represent Langdon and Miller but that its efforts to contact Martinez-Garcia were unsuccessful. Dkt. No. 60. The next day, the undersigned ordered another attempt to serve Martinez-Garcia. Dkt. No. 62. The undersigned appointed Trapp counsel on January 10, 2023. Dkt. No. 65. On January 12, 2023, the undersigned lifted the stay and reopened the case. Dkt. No. 66. Defendants Langdon and Miller filed an Answer on February 13, 2023. Dkt. No. 71. On June 6, 2023, the undersigned ordered a third attempt to serve Martinez-Garcia, and the summons was returned as executed on August 10, 2023. Dkt. Nos. 80–81, 84. Recently, on October 31, 2023, Martinez-Garcia filed his Answer. Dkt. No. 89.

### III. QUALIFIED IMMUNITY

Each Defendant raises the defense of qualified immunity in their Answer, Dkt. Nos. 71, 89. And because the Court is required to resolve questions of qualified immunity "at the earliest possible stage of a litigation," *see Carswell v. Camp*, 37 F.4th 1062, 1067 (5th Cir. 2022), the undersigned ordered the parties to brief that issue while discovery remained stayed and before entry of a Rule 16 scheduling order. Dkt. No. 85 at 2–3. In

response to that Order, the Defendants, through the OAG, agreed to defer resolving qualified immunity at this stage:

> Defendants now clarify that they do not seek to limit discovery on the basis of qualified immunity or to file a motion for summary judgment limited solely to that defense. Rather, given the facts of this particular case, Defendants agree to proceed under a typical pre-trial schedule, while reserving the right to raise qualified immunity—among other defenses—in a motion for summary judgment by the dispositive motion deadline.

Dkt. No. 88 at 1–2. The undersigned then ordered the parties to confer and submit a proposed scheduling order, and the parties submitted their proposal on October 24, 2023. Dkt. Nos. 87–88.

### IV. DISCUSSION AND ANALYSIS

To determine whether a claim of excessive use of force survives under Section 1983, a court must make a "core judicial inquiry" as to the context and nature of the force rather than the injury. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam). A court must determine "whether force was applied in a good-faith effort to restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1990). Applying this standard, Trapp's excessive-force claims against Langdon, Miller, and Martinez-Garcia survive the Court's preliminary screening under 28 U.S.C. §§ 1915 and 1915A.

Trapp alleges that Miller punched him multiple times—including blows to the head and face—and did so while Trapp was handcuffed. Dkt. No. 2 at 6; Tr. at 15:05. Moreover, Trapp alleges that Miller punched him while Miller was holding handcuffs in such a way that they operated as "brass knuckles." Tr. at 1:03:02–1:03:10. As for Langdon, Trapp

alleges that Langdon sprayed him with a chemical agent while Trapp was in his locked cell, and this was done solely in retaliation for Trapp's lawsuit against Miller. Tr. at 52:54–53:08. Finally, Trapp alleges that Martinez-Garcia sprayed him with a chemical agent even though Trapp was complying with orders from another officer. Tr. at 57:10–57:48.

Accepting these well-pleaded facts as true, Trapp has pleaded enough facts to demonstrate the plausibility of his excessive-force claims against Langdon, Miller, and Martinez-Garcia. These Defendants have been served and filed an Answer to Trapp's Complaint. Dkt. Nos. 71, 84, 89. Based on Langdon and Miller's representation that discovery is necessary to resolve the issue of qualified immunity, Dkt. No. 86, the undersigned RECOMMENDS that the Court adopt the parties' proposed scheduling order, Dkt. No. 88-1.[2]

## V.  TRANSFER OF CASE TO DOCKET OF DISTRICT JUDGE

As of the date of this FCR and Order, all parties have not consented to the magistrate judge exercising the full jurisdiction of this Court. Thus, it is ORDERED that this case be transferred back to the docket of United States District Judge James Wesley Hendrix. This case shall now be designated as Civil Action No. 1:20-CV-00044-H.

## VI.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report

---

[2] Martinez-Garcia, like Langdon and Miller, is represented by the Office of the Attorney General. Thus, the undersigned presumes that Martinez-Garcia shares the other Defendants' view that discovery is necessary to resolve the issue of qualified immunity and joins in the proposed scheduling order.

and Recommendation must file specific written objections within fourteen days of being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    ORDERED this 1st day of November 2023.

 

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE